1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
Julian J. Pardini, Esq. (SB#133878)
2 |   Email: julian.pardini@lewisbrisbois.com
John T. Burnite, Jr. (SB #162223)
3 |   Email: john.burnite@lewisbrisbois.com
333 Bush Street, Suite 1100
4 | San Francisco, California 94104
Tel:   415.362.2580
5 | Fax:   415.434.0882

6 | Attorneys for Plaintiff
LINCOLN BENEFIT LIFE COMPANY
7 |

8 | IN THE UNITED STATES DISTRICT COURT

9 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

10 | LINCOLN BENEFIT LIFE COMPANY,                    Case No.

11 |                         Plaintiff,    **COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, RECOVERY OF POLICY BENEFITS PAID)**

12 |                 v.

13 | BRICEIDA RYAN, SILVIA CAMMARERI, and DOES 1-10,

14 |                         Defendants.    **Demand For Jury Trial**

15 |

16 | Plaintiff LINCOLN BENEFIT LIFE COMPANY (hereinafter "LINCOLN") hereby

17 | alleges as follows:

18 | **GENERAL ALLEGATIONS**

19 | 1.   At all times relevant herein, LINCOLN was, and now is, a corporation organized

20 | under the laws of the State of Nebraska, licensed to do business, and doing business as an insurer

21 | in the State of California.

22 | 2.   LINCOLN is informed and believes and on that basis alleges that Defendant

23 | BRICEIDA RYAN ("RYAN") is an individual living at all time relevant in San Mateo County,

24 | California.

25 | 3.   LINCOLN is informed and believes and on that basis alleges that Defendant

26 | SILVIA CAMMARERI ("CAMMARERI") is an individual living at all relevant times in

27 | San Mateo County, California.

28 | / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-8626-2841.1
1
COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, RECOVERY OF POLICY BENEFITS PAID)

4.    **JURISDICTION**:  This Court has diversity jurisdiction by virtue of 28 U.S.C. section 1332.  This is a civil action between citizens of different states wherein the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.    **VENUE**:  Venue is properly placed in this Court under 28 U.S.C. section 1391 because the insurance policy issued by LINCOLN described herein was delivered to the insured and the premiums were paid in this judicial district, and because a substantial part of the events and omissions giving rise to this claim as described herein occurred in this judicial district.

6.    LINCOLN does not know the true names and capacities, whether individual, corporate, association or otherwise, of the defendants Doe 1 through 10, inclusive, and, therefore, sues such defendants by fictitious name.  When the true names and capacities of the defendants sued herein as Doe 1 through 10, inclusive, have been ascertained, LINCOLN will seek leave to amend this Complaint to insert said names and capacities.  LINCOLN is informed and believes, and thereon alleges, that each of these fictitiously named defendants has an interest in the policy of insurance which is the subject of the instant lawsuit.

7.    On November 10, 1998, RYAN applied to LINCOLN for a comprehensive long term care policy of insurance and was approved therefor.  LINCOLN issued to RYAN a "Comprehensive Long Term Policy", policy no. 10 700048852W (the "Policy"), which went into effect on November 10, 1998, and was to remain in effect so long as RYAN paid the premiums therefor.  A true and correct copy of the Policy is attached as **Exhibit A** and incorporated by this reference as though set forth in full.

8.    The Policy contained the following relevant provisions:

**COMPREHENSIVE LONG TERM CARE POLICY**

. . .

The issuance of this Long Term Care Insurance Policy is based upon your responses to the questions on your application. . . .  If your answers are misstated or untrue, the Company may have the right to deny benefits or rescind your policy. . . .

**PART 1:  INSURING AGREEMENT AND EFFECTIVE DATE**

We promise to pay the benefits described in this policy.  The payment of these benefits is subject to all of the definitions,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  limitations, and provisions of this policy.  We make the promise and
2  issue this policy in consideration of: (1) the statements made in your
   signed application, a copy of which is attached and made part of this
3  policy; and (2) payment of the initial premium.  This policy takes
   effect on the Effective Date shown in the Policy Schedule and
4  continues in force as long as premiums are paid in accordance with
   the Renewal Provision.

5  . . .

6  **PART 3:  BENEFIT PROVISIONS**

7  . . .

8  "Activities of Daily Living" are:

9     a.   Eating, which shall mean reaching for, picking up, and
   grasping a utensil and cup; getting food on a utensil, and
10  bringing food, utensil, and cup to mouth; manipulating food
    on plate; and cleaning face and hands as necessary following
11  meals.

12     b.   Bathing . . ..

13     c.   Dressing . . ..

14     d.   Toileting . . ..

15     e.   Transferring, which shall mean moving from one sitting or
    lying position to another sitting or lying position; . . .
16
       f.   Continence . . ..
17
       g.   Ambulating, which shall mean walking or moving around
18  inside or outside the home regardless of the use of a cane,
    crutches, or braces.
19

20  E.   HOME CARE BENEFITS

21  Benefits payable for Home Care include benefits for the following:

22  Home Health Care, Adult Day Care, Personal Care, Homemaker
    Services, Hospice Services and Respite Care.
23
    "Home Health Care" means skilled nursing or other professional
24  services performed in your Home.

25  "Home" means your residence . . ..

26  "Personal Care" means assistance with the Activities of Daily
    Living . . . performed in your Home. . . .
27
    We will pay your actual daily expenses incurred up to the Maximum
28  Daily Benefit, as shown in the Policy Schedule for each day you

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

receive Home Care.
Eligibility for Benefit Payments — You will be Eligible for Benefits
if:

    a.    You are unable to perform two or more Activities of Daily
        Living without the hands-on assistance of another person; or

    b.    You have Cognitive Impairment which requires supervision
        or verbal cueing by another person to protect yourself or
        others.

(Ex. A, Bates-stamped pages 01000260 - 279.)

9.      On January 12, 2010, RYAN gave notice to LINCOLN of her claim for long-term care. On January 20, 2010, she submitted to LINCOLN her "Claim for Long Term Care/Claimant's Statement", stating that she had a brain tumor and needed assistance with ambulation, bathing, continence, dressing, eating, toileting, and transferring. A true and correct copy of RYAN's claim submission is attached as **Exhibit B** and incorporated by this reference as though set forth in full. According to her attending physician she also had cognitive impairment.

10.     Based on the information provided by RYAN, LINCOLN approved RYAN's eligibility for payment of benefits on February 2, 2010.

11.     Initial benefits in the amount of $1,436.68 were released on March 12, 2010, for the period of January 7, 2010 through January 13, 2010. Benefits in that amount—$1,436.68 per week—issued in bi-weekly payments of $2,873.36, began shortly thereafter and continued through July 20, 2016. Thus, to date, LINCOLN paid RYAN a total of $456,462.60 in policy benefits.

12.     RYAN provided LINCOLN with Home Health Service Caregiver Activity Notes ("activity notes") from January 7, 2010, through July 20, 2016. According to those activity notes, CAMMARERI had worked 7 days a week, 24 hours per day, for over 6 years as RYAN's independent caregiver.

13.     In light of RYAN's activity notes, LINCOLN undertook an investigation. Through a social media check, LINCOLN discovered that CAMMARERI had been pregnant and gave birth on September 29, 2015. However, RYAN's activity notes indicated that CAMMARERI provided services to RYAN during the entire month of September, including on the date she gave birth.

14.     A background check of RYAN confirmed that she is a published author with

COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, RECOVERY OF POLICY BENEFITS PAID)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  claimed psychic abilities.  The background check also confirmed that RYAN is an owner and

2  operator of a silk screening business/graphic design, which appears to be run out of her home.

3  According to the research conducted in conjunction with that background check, RYAN has been

4  operating that business continuously for 31 years.

5        15.    LINCOLN undertook surveillance of RYAN and CAMMARERI that showed

6  RYAN engaged in some "Activities of Daily Living" without assistance and CAMMARERI rarely

7  at RYAN's home.

8  **FIRST CAUSE OF ACTION**

9  **(for Fraud)**

10        16.    LINCOLN incorporates the allegations in paragraphs 1-15 by this reference as

11  though set forth fully herein.

12        17.    At all times material herein, RYAN and CAMMARERI made material

13  misrepresentations concerning the existence and nature of RYAN's disability and the services

14  allegedly provided by CAMMARERI to RYAN.  RYAN and CAMMARERI knew of the falsity

15  of said misrepresentations, and made said misrepresentations with the intent to defraud

16  LINCOLN.  LINCOLN justifiably relied on said misrepresentations and, due to such justifiable

17  reliance, paid monies to RYAN that it would not have paid, and would not have been contractually

18  liable to pay, had it known of the falsity of said misrepresentations.

19        18.    Therefore, the above-described conduct of RYAN and CAMMARERI constituted

20  fraud.

21        19.    Further, the above-described conduct of RYAN and CAMMARERI, undertaken by

22  them with the intent to defraud LINCOLN, was despicable and designed to cause injury to

23  LINCOLN and, therefore, RYAN and CAMMARERI, and each of them, is liable to LINCOLN

24  for punitive damages.

25        20.    LINCOLN has been damaged in an amount to be established at trial, which amount

26  includes, at a minimum, the amounts paid to RYAN in benefits under the Policy, the costs and

27  fees, including attorneys' fees, incurred by LINCOLN in the investigation of this matter, and

28  attorneys' fees LINCOLN has incurred in this action.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**SECOND CAUSE OF ACTION**

**(Conversion)**

21. LINCOLN incorporates the allegations in paragraphs 1-20 by this reference as though set forth fully herein.

22. At all times material herein, RYAN and CAMMARERI made material misrepresentations concerning the existence and nature of RYAN's disability and the services allegedly provided by CAMMARERI to RYAN. RYAN and CAMMARERI knew of the falsity of said misrepresentations, and made said misrepresentations with the intent to exercise wrongful dominion over the property of LINCOLN, namely, the monies LINCOLN paid to RYAN as benefits under the Policy. As a result of said misrepresentations, RYAN and CAMMARERI did exercise wrongful dominion over the property of LINCOLN.

23. Therefore, the above-described conduct of RYAN and CAMMARERI constituted conversion.

24. Further, the above-described conduct of RYAN and CAMMARERI, undertaken by them with the intent to defraud LINCOLN, was despicable and designed to cause injury to LINCOLN and, therefore, RYAN and CAMMARERI, and each of them, is liable to LINCOLN for punitive damages.

25. LINCOLN has been damaged in an amount to be established at trial, which amount includes, at a minimum, the amounts paid to RYAN in benefits under the Policy, the costs and fees, including attorneys' fees, incurred by LINCOLN in the investigation of this matter, and attorneys' fees LINCOLN has incurred in this action.

**THIRD CAUSE OF ACTION**

**(Declaratory Relief re: LINCOLN's Right to Void the Policy)**

26. LINCOLN incorporates the allegations in paragraphs 1-25 by this reference as though set forth fully herein.

27. This is a declaratory relief action pursuant to 28 U.S.C. section 2201 and 28 U.S.C. section 2202, for the purpose of determining a question of actual controversy between the parties concerning their rights and duties under a written contract of insurance.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

28.     An actual controversy has arisen and now exists between LINCOLN, on the one hand, and RYAN on the other hand, regarding LINCOLN's right to void the Policy.  LINCOLN contends that RYAN intentionally misrepresented material facts about her claim; that she knew of the falsity of her misrepresentations; that she made said misrepresentations with the intent to deceive LINCOLN; that she did deceive LINCOLN such that LINCOLN paid Policy benefits to RYAN to which she was not entitled; and that her actions constituted a breach of the terms, conditions, and provisions of the Policy.

29.     LINCOLN further contends that it is entitled, in light of RYAN's fraudulent conduct, to void the Policy in its entirety.

30.     LINCOLN is informed and believes and on that basis alleges that RYAN disputes LINCOLN's contentions, and that she further contends that she is entitled to further policy benefits beyond those that LINCOLN has already paid.

31.     LINCOLN has no adequate remedy at law and desires a judicial determination of the respective rights, duties and interests of the parties in accord with the contentions set forth herein.  A prompt adjudication of this controversy is necessary and proper at this time so that the parties may ascertain their respective rights, duties and interests under the Policy for RYAN's claim, including a determination that the Policy allows LINCOLN to void the Policy in response to RYAN's intentional misrepresentation of material facts pertaining to a claim under the Policy.

## FOURTH CAUSE OF ACTION

**(Declaratory Relief re: LINCOLN's Right to Recover Policy Benefits Paid)**

32.     LINCOLN incorporates the allegations in paragraphs 1-31 by this reference as though set forth fully herein.

33.     An actual controversy has arisen and now exists between LINCOLN, on the one hand, and RYAN and CAMMARERI on the other hand, regarding LINCOLN's right to recover Policy benefits already paid with respect to RYAN's claim.  LINCOLN contends that RYAN and CAMMARERI intentionally misrepresented material facts about the claim; that they, and each of them, knew of the falsity of those misrepresentations; that they, and each of them, made the misrepresentations with the intent to deceive LINCOLN; that they, and each of them, did deceive

COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, RECOVERY OF POLICY BENEFITS PAID)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  LINCOLN such that LINCOLN paid Policy benefits to which RYAN was not entitled; and that

2  RYAN's actions constituted a breach of the terms, conditions, and provisions of the Policy.

3       34.    LINCOLN further contends that had the misrepresentations of RYAN and

4  CAMMARERI been discovered prior to LINCOLN's payment of any Policy benefits, then

5  LINCOLN could have and would have denied the entirety of the claim and voided the Policy on

6  that basis.

7       35.    LINCOLN is informed and believes and on that basis alleges that RYAN and

8  CAMMARERI dispute LINCOLN's contentions, and that they, and each of them, further contends

9  that RYAN was entitled to receive the Policy benefits already paid and that RYAN is entitled to

10  further policy benefits beyond those that LINCOLN has already paid.

11       36.    LINCOLN has no adequate remedy at law and desires a judicial determination of

12  the respective rights, duties and interests of the parties in accord with the contentions set forth

13  herein.  A prompt adjudication of this controversy is necessary and proper at this time so that the

14  parties may ascertain their respective rights, duties and interests under the Policy for RYAN's

15  claim, including a determination that LINCOLN may recover Policy benefits already paid to

16  RYAN, and that LINCOLN may recover said benefits already paid from both RYAN and

17  CAMMARERI.

18       WHEREFORE, LINCOLN prays for judgment against Defendants, and each of them, as

19  follows:

20       1.    That the Court enter judgment in favor of LINCOLN and against RYAN and

21  CAMMARERI, and each of them, on the first cause of action stated herein for fraud;

22       2.    That the Court enter judgment in favor of LINCOLN and against RYAN and

23  CAMMARERI, and each of them, on the second cause of action stated herein for conversion;

24       3.    The Court issue a declaration that LINCOLN is entitled to void the Policy as a

25  result of the misrepresentations of RYAN of material facts regarding the claim;

26       4.    That the Court issue a declaration that RYAN and CAMMARERI, and each of

27  them, must reimburse to LINCOLN all Policy benefits paid to date;

28  / / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-8626-2841.1

COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY, RECOVERY OF POLICY BENEFITS PAID)

1    5.    That the Court award LINCOLN damages to include, in addition to the monies

2  already paid to RYAN as benefits under the Policy, the costs and fees, including attorneys' fees,

3  incurred by LINCOLN in its investigation of RYAN's claim;

4    6.    That the Court award prejudgment interest to LINCOLN;

5    7.    That LINCOLN be awarded punitive damages against RYAN and CAMMARERI,

6  and each of them;

7    8.    That LINCOLN be awarded costs and reasonable attorneys' fees to be determined

8  by the Court;

9    9.    That the Court grant such further relief to LINCOLN as the Court may deem

10  proper.

11

12  Dated: October 4, 2016                    LEWIS BRISBOIS BISGAARD & SMITH LLP

13

14                                           By: /s/ John T. Burnite_____
                                                 Julian J. Pardini
15                                               John T. Burnite
                                                 Attorneys for Plaintiff
16                                               LINCOLN BENEFIT LIFE COMPANY

17

18                          **DEMAND FOR JURY TRIAL**

19      Plaintiff, Lincoln Benefit Life Company, demands a jury trial in this matter.

20

21  DATED: October 4, 2016                    LEWIS BRISBOIS BISGAARD & SMITH LLP

22

23                                           By:   /s/ John T. Burnite_____
                                                   Julian J. Pardini
24                                                 John T. Burnite
                                                   Attorneys for Plaintiff
25                                                 LINCOLN BENEFIT LIFE COMPANY

26

27

28


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4811-8626-2841.1                                    9
COMPLAINT FOR FRAUD, CONVERSION, DECLARATORY RELIEF (VOIDANCE OF INSURANCE POLICY,
RECOVERY OF POLICY BENEFITS PAID)

# EXHIBIT   A

## COMPREHENSIVE LONG TERM CARE POLICY

**Read this policy carefully. It is a legal contract between you and us.**

**THIS POLICY IS AN APPROVED LONG-TERM CARE INSURANCE POLICY UNDER STATE INSURANCE REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.**

**This contract for long-term care insurance is not intended to be a federally qualified long-term care insurance contract.**

**NOTICE TO BUYER:** This policy may not cover all of the costs associated with long term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully all policy limitations.

**CAUTION:** The issuance of this Long Term Care Insurance Policy is based upon your responses to the questions on your application. A copy of your application is enclosed. If your answers are misstated or untrue, the Company may have the right to deny benefits or rescind your policy. The best time to clear up any questions is now, before a claim arises! If, for any reason, any of your answers are incorrect, contact the Company at this address: Lincoln Benefit Life Company, P.O. Box 4243, Woodland Hills, CA 91365-4243.

This policy provides Nursing Facility Confinement Benefits in a Nursing Facility or Residential Care Facility for the Elderly, Home Care Benefits and other benefits as defined herein. In this policy, Lincoln Benefit Life Company will be referred to as "we", "us", or "our". The Insured(s) named in the Policy Schedule will be referred to as "you" or "your".

THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

RENEWAL PROVISION - This policy is guaranteed renewable for life. Premiums are subject to change. You may renew this policy for the rest of your life. To renew, just pay the premium due. It must be paid on or before the due date or within the grace period. We cannot refuse to renew this policy or place any restrictions on it if the premium is paid on time. We can only change the premium for this policy if we change premiums for everyone with this policy form in your state. We will give you at least 31 days written notice at your last address shown in our records before we change your premium.

YOUR 30 DAY RIGHT TO EXAMINE YOUR POLICY — If you are not satisfied with your policy, you may return it to us or our agent within 30 days after you receive it. We will then refund any premium you have paid within 30 days of our receipt of the policy and the policy will be considered to be void from its beginning.

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.

Michael J. Velotta
Secretary

Gene Wraith
President

**LINCOLN BENEFIT LIFE COMPANY**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110
A Legal Reserve Stock Life Insurance Company

# GUIDE TO YOUR POLICY

Page

Renewal Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Your 30 Day Right to Examine Your Policy . . . . . . . . . . . . . . . . . . . 1

Policy Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Insuring Agreement and Effective Date . . . . . . . . . . . . . . . . . . . . . . 4

Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Benefit Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Nursing Facility Confinement Benefit. . . . . . . . . . . . . . . . . . . . . 4

    Extension of Nursing Facility Benefits . . . . . . . . . . . . . . . . . . . 6

    Nursing Facility Bed Reservation Benefit . . . . . . . . . . . . . . . . . . 6

    Waiver of Premium Benefit . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Home Care Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    Lowering Premiums by Reducing Benefits . . . . . . . . . . . . . . . . . 8

    Increasing Your Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Availability of New Benefits or Eligibility Criteria . . . . . . . . . . . . 8

    Personal Care Advisor . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Total Maximum Amount Payable . . . . . . . . . . . . . . . . . . . . . . 9

Limitations or Conditions on Eligibility for Benefits . . . . . . . . . . . . . . 9

    General Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Pre-existing Conditions Limitation . . . . . . . . . . . . . . . . . . . . . 9

    Elimination Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Claim Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

General Policy Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Other Policy Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## PART 1: INSURING AGREEMENT AND EFFECTIVE DATE

We promise to pay the benefits described in this policy. The payment of these benefits is subject to all of the definitions, limitations, and provisions of this policy. We make this promise and issue this policy in consideration of: (1) the statements made in your signed application, a copy of which is attached and made part of this policy; and (2) payment of the initial premium. This policy takes effect on the Effective Date shown in the Policy Schedule and continues in force as long as premiums are paid in accordance with the Renewal Provision.

## PART 2: DEFINITIONS

"Family" means a person's spouse, or the person's or spouse's child, parent, brother or sister, including the same degrees of relationship as effected or affected by a common law marriage, if recognized in the state where you reside.

"Insured" means the person(s) shown in the Policy Schedule. The Insured(s) will be referred to in the policy as "you" or "your".

"Pre-existing Condition" means a condition for which medical advice or treatment was recommended by, or received from, a provider of health care services during the 6 months immediately prior to the effective date of coverage under your policy.

## PART 3: BENEFIT PROVISIONS

### A. NURSING FACILITY CONFINEMENT BENEFIT

We will pay the Nursing Facility Confinement Benefit as shown in the Policy Schedule.

<u>Eligibility for Benefit Payment</u> — You will be Eligible for Benefits while confined in a NURSING FACILITY if;

1. It is Medically Necessary; or
2. You are unable to perform one or more Activities of Daily Living without the hands-on assistance of another person; or
3. You have a Cognitive Impairment which requires supervision or verbal cueing by another person to protect yourself or others.

You will be Eligible for Benefits while confined in a RESIDENTIAL CARE FACILITY FOR THE ELDERLY if:

1. You are unable to perform two or more Activities of Daily Living without the hands-on assistance of another person; or
2. You have a Cognitive Impairment which requires supervision or verbal cueing by another person to protect yourself or others.

"Nursing Facility" means a place which:

a. is primarily engaged in providing continuous professional nursing care and related services, on an inpatient basis and is licensed under state law to perform the services it is providing; and
b. is a separate facility or a distinct part of another health care facility; and
c. provides 24-hour per day nursing care; and
d. provides as a minimum Physician, skilled nursing, dietary and pharmaceutical services and an activity program; and
e. maintains a daily record on each patient.

A Nursing Facility is not:

a. a hospital; or
b. a place that primarily treats the mentally ill, drug addicts, or alcoholics; or
c. a rest home, a Residential Care Facility for the Elderly, hospice care facility, an unlicensed facility, a place that provides domiciliary, retirement or educational care; or
d. a government or veteran facility or any other facility where the patient is not required to pay.

"Medically Necessary" means a treatment, service, or supply which is broadly accepted by the medical profession as appropriate and essential in the diagnosis or treatment of a sickness or accident and is based on generally recognized and accepted standards of health care.

"Activities of Daily Living" are

a. Eating, which shall mean reaching for, picking up, and grasping a utensil and cup; getting food on a utensil, and bringing food, utensil, and cup to mouth; manipulating food on plate; and cleaning face and hands as necessary following meals.

b. Bathing, which shall mean cleaning the body using a tub, shower, or sponge bath, including getting a basin of water, managing faucets, getting in and out of tub or shower, and reaching head and body parts for soaping, rinsing, and drying.

c. Dressing, which shall mean putting on, taking off, fastening, and unfastening garments and undergarments and special devices such as back or leg braces, corsets, elastic stockings or garments, and artificial limbs or splints.

d. Toileting, which shall mean getting on and off a toilet or commode and emptying a commode, managing clothing and wiping and cleaning the body after toileting, and using and emptying a bedpan and urinal.

e. Transferring, which shall mean moving from one sitting or lying position to another sitting or lying position; for example, from bed to or from a wheelchair or sofa, coming to a standing position, or repositioning to promote circulation and prevent skin breakdown.

f. Continence, which shall mean the ability to control bowel and bladder as well as use ostomy or catheter receptacles, and apply diapers and disposable barrier pads.

g. Ambulating, which shall mean walking or moving around inside or outside the home regardless of the use of a cane, crutches, or braces.

"Cognitive Impairment" means the deterioration or loss of your intellectual capacity which requires supervision or verbal cueing by another person to protect yourself or others. It is measured by clinical evidence and standardized tests which reliably measure your impairment in:

a. short or long term memory;

b. your orientation as to person (such as who you are), place (such as your location) and time (such as day, date and year).

c. deductive or abstract reasoning.

Cognitive Impairment includes Alzheimer's disease and similar forms of irreversible dementia.

"Residential Care Facility for the Elderly" means a place which:

a. is licensed in California as a Residential Care Facility for the Elderly, or is licensed under applicable state law where services are being performed, where such licensing is required; and

b. has at least one trained staff member on duty 24 hours per day; and

c. provides continuous room and board; and

d. provides residents who do not primarily require continuous skilled nursing care with basic, personal assistance care which can be performed by persons without professional medical training; and

e. does not provide 24-hour per day nursing care.

Conditions for Benefit Payment — We will pay benefits for Nursing Facility Confinement if:

1. You are confined in a Nursing Facility or Residential Care Facility for the Elderly upon the recommendation of a Physician, R.N. or Licensed Social Worker; and

2. A Plan of Care as outlined in the policy is submitted to us for review; and

3. Your confinement begins while this policy is in force; and

4. You have not exceeded the Total Maximum Amount Payable shown in the Policy Schedule; and

5. You have satisfied the Elimination Period shown in the Policy Schedule; and

6. You are not receiving payments for any other benefits under this policy.

"Physician" means a duly licensed practitioner of the healing arts. The Physician must be acting within the scope of his or her license at the time the treatment or service is performed. The Physician must not be a member of your Family.

"Registered Graduate Professional Nurse (R.N.)" means a duly licensed nurse acting within the scope of his or her license at the time the treatment or service is performed. The R.N. must not be a member of your Family.

"Licensed Social Worker" means a duly licensed social worker acting within the scope of his or her license at the time the treatment or service is performed. The Licensed Social Worker must not be a member of your Family.

"Plan of Care" means a written plan developed by a Physician, R.N. or a Licensed Social Worker under medical direction in consultation with you, based upon an assessment indicating that you are Eligible for Benefit Payments under this policy because you are unable to perform one or more Activities of Daily Living for Nursing Facility Confinement (two or more for Residential Care Facility for the Elderly Confinement or Home Care) or you have a Cognitive Impairment.

The Plan of Care will recommend the necessary services to be performed and in addition, will specifically identify the frequency and type of care most suitable to meet your needs, as well as the most appropriate providers for such care.

"Elimination Period" means the number of days you must be confined in a Nursing Facility or Residential Care Facility for the Elderly; the number of days you must receive Home Care; or any combination of these before benefits become payable under this policy. The Elimination Period is required only once under this policy. No future Elimination Period will be required once you have satisfied the Elimination Period shown in the Policy Schedule. Days may be accumulated under separate claims in order to satisfy the total Elimination Period.

B. EXTENSION OF NURSING FACILITY BENEFITS

Termination of this policy will not terminate any benefits payable for any confinement if such confinement begins while this policy is in force and continues without interruption after termination. Any benefits payable under this provision are subject to the Total Maximum Amount Payable, any applicable Elimination Period and all other provisions of this policy.

C. NURSING FACILITY BED RESERVATION BENEFIT

We will pay a benefit equal to the Daily Benefit Amount for Nursing Facility Confinement shown in the Policy Schedule if:

1. You are receiving benefits under this policy for Nursing Facility Confinement; and

2. You are Eligible for Benefits; and

3. You require hospitalization while confined in a Nursing Facility; and

4. You incur charges to reserve your bed in the Nursing Facility during your hospitalization; and

5. You have not exceeded the Total Maximum Amount Payable shown in the Policy Schedule.

Limitation: The Nursing Facility Bed Reservation Benefit is limited to 21 days per calendar year.

### D. WAIVER OF PREMIUM BENEFIT

We will waive the payment of any premiums that become due for the policy and any attached riders after you have been confined in a Nursing Facility or a Residential Care Facility for the Elderly for a period of 60 days and you are Eligible for Benefits. The 60 days need not be consecutive, but must be satisfied during a single claim period. The premium will be waived according to the mode of payment in effect at the time confinement begins. Premium payments will again become payable on the next renewal date following the end of your confinement. Once your confinement ends, any subsequent confinement separated by a period of at least 180 consecutive days will be considered a new claim period, subject to a new 60 day waiting period for waiver of premium.

### E. HOME CARE BENEFITS

Benefits payable for Home Care include benefits for the following:

Home Health Care, Adult Day Care, Personal Care, *Homemaker Services, Hospice Services and* Respite Care.

"Home Health Care" means skilled nursing or other professional services performed in your Home.

"Home" means your residence, including a rest home. "Home" does not include a Nursing Facility, Residential Care Facility for the Elderly or a hospital.

"Adult Day Care" means medical or nonmedical care on a less than 24-hour basis, provided in a licensed facility outside of your Home for personal services, supervision, protection or assistance in sustaining daily needs, including eating, bathing, dressing, ambulating, transferring, toileting and taking medications.

"Personal Care" means assistance with the Activities of Daily Living, including Instrumental Activities of Daily Living, performed in your Home.

"Instrumental Activities of Daily Living" means using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, doing your laundry and light housekeeping.

"Homemaker Services" means assistance with activities necessary to or consistent with your ability to remain in your Home.

"Hospice Services" means outpatient services not paid by Medicare which are provided through a licensed hospice, and are designed to provide: palliative care; alleviate physical, emotional, social and spiritual discomforts you may experience during the last phases of life due to the existence of a terminal disease; and to provide supportive care to your primary care giver and your family.

"Hospice Care Facility" means a place which:

a.  is licensed under state law to perform the services it is providing, where such licensing is required; and

b.  provides Hospice Care.

"Respite Care" means short term care provided in an institution, in the Home or in a community-based program which is designed to relieve the primary care giver.

We will pay your actual daily expenses incurred up to the Maximum Daily Benefit, as shown in the Policy Schedule for each day you receive Home Care.

Eligibility for Benefit Payments — You will be Eligible for Benefits if:

a.  You are unable to perform two or more Activities of Daily Living without the hands-on assistance of another person; or

b.  You have a Cognitive Impairment which requires supervision or verbal cueing by another person to protect yourself or others.

We will pay your actual daily expenses incurred up to the Maximum Daily Benefit for: Home Health Care, Adult Day Care, Personal Care, Homemaker Services and Hospice Services as shown in the Policy Schedule. For Respite Care we will pay your actual daily expenses incurred for Nursing Facility Confinement or your actual daily expenses incurred for Home Care, up to the Maximum Daily Benefit, as shown in the Policy Schedule.

Limitation: Respite Care is limited to 14 days per calendar year.

Conditions for Benefit Payments — We will pay benefits if:

1. A Plan of Care as outlined in the policy is submitted to us for review.
2. You have satisfied the Elimination Period as shown in the Policy Schedule; and
3. You have not exceeded the Total Maximum Amount Payable shown in the Policy Schedule.

Eligible Providers — Services may be provided by, but are not limited to, an employee of a licensed Home Health Agency who is qualified through experience and/or training to perform such services, or any skilled or unskilled person who is duly licensed to perform such services where licensing is required.

Alternative Payment of Benefits

If you are otherwise Eligible for Benefits and if agreed upon by you, your Physician and us, we will consider payment of your claim for services or equipment not specifically shown in the policy, subject to the Total Maximum Amount Payable shown in the Policy Schedule.

F. LOWERING PREMIUMS BY REDUCING BENEFITS

Upon renewal of your policy, after your coverage has been in force for one year, you have the option to reduce the premiums under your current coverage, subject to the minimum Daily Benefit available, by selecting one of the following three options:

1. Reducing the Total Maximum Amount Payable as shown in your policy schedule; or
2. Reducing the Daily Benefit amount for Nursing Facility Confinement and/or the Home Care Maximum Daily Benefit amount shown in your policy schedule; or
3. Converting this Comprehensive Long Term Care Policy to a policy providing Nursing Facility Care Only.

The premium rate for your reduced coverage will be based upon your age on the date your policy was originally issued and also the premium rate in effect on that date.

In the event your policy is about to lapse due to nonpayment of premium, we will notify you of the three options described above, which will become available to you in order to reduce your coverage. This notice will be sent to you at least 30 days before your policy is cancelled for non-payment of premium.

In the event the premium rates are increased for everyone with this policy form in your state, you have the option to reduce your coverage under any of the three options described above.

G. INCREASING YOUR BENEFITS

After your coverage has been in force for one year, and on each policy anniversary thereafter, you have the option to increase your current coverage, subject to the maximum Daily Benefit amount available by selecting one of the following two options:

1. Increasing your Total Maximum Amount Payable; or
2. Increasing your Daily Benefit amount for Nursing Facility Confinement and/or the Home Care Maximum Daily Benefit amount.

The option you select to increase your coverage may be based upon your attained age at the time benefits are increased. The amount of the increase in your coverage will be subject to evidence of your insurability. The option to increase benefits must be made by written request to us, within 30 days of the date of your policy anniversary.

H. AVAILABILITY OF NEW BENEFITS OR ELIGIBILITY CRITERIA

In the event that we develop a new benefit or new eligibility criteria for benefits, that were not available under your existing policy, we will provide you with notification of these enhancements. Such notice will be sent to you within 12 months of availability and will include an offer to obtain the available enhancement.

We will not provide any enhancements described above if you are: (a) presently receiving benefits under the policy or attached riders; or (b) currently eligible to receive benefits, subject to meeting the elimination period shown in your policy schedule.

I.  PERSONAL CARE ADVISOR

Upon making a claim for benefits under this policy or any attached riders, we will assign a Personal Care Advisor to assist you with any questions you may have about your claim. You can contact your Personal Care Advisor by calling the toll-free number shown in the Policy Schedule.

J.  TOTAL MAXIMUM AMOUNT PAYABLE

Your Total Maximum Amount Payable is shown in the Policy Schedule. The total of all benefit payments under your policy and any attached riders may not exceed this amount. Your coverage will end after the Total Maximum Amount Payable has been paid.

## PART 4:  LIMITATIONS OR CONDITIONS ON ELIGIBILITY FOR BENEFITS

A.  GENERAL EXCLUSIONS

This policy does not cover any confinement, treatment or services:

1.  Caused by psychosis, or mental or emotional disease or disorder. However, this shall not operate to exclude coverage for loss which results from Alzheimer's disease or any other demonstrable organic disease such as senile dementia;

2.  Due to intentionally self-inflicted injury;

3.  Due to attempted suicide while sane or insane;

4.  Resulting from drug addiction or alcoholism or resulting from your being intoxicated or under the influence of a narcotic, except as prescribed by a Physician;

5.  Due to your commission of or attempt to commit a felony or while you are engaged in an illegal occupation;

6.  Provided outside of the United States or Canada;

7.  Due to treatment provided in a government facility, unless otherwise required by law, or for which benefits are available under other governmental programs (except Medi-Cal or Medicaid);

8.  Provided under any state or federal workers' compensation, employer's liability or occupational disease law, or any motor vehicle no-fault law;

9.  Provided by a member of your immediate Family; or

10. For which no charge is normally made in the absence of insurance.

B.  PRE-EXISTING CONDITIONS LIMITATION

We will not pay benefits for a loss due to a Pre-existing Condition if the loss begins during the first 6 months after the effective date of coverage under your policy. However, if a Pre-existing Condition is disclosed on your application and you otherwise qualify for benefits, benefits will be paid for such a loss.

If this policy is replacing another long term care policy or certificate, we will waive any time periods applicable to Pre-existing Conditions for similar benefits to the extent that similar exclusions have been satisfied under the original policy.

C.  ELIMINATION PERIOD

No benefits are payable under this policy until satisfaction of the Elimination Period shown in the Policy Schedule.

## PART 5:  CLAIM PROVISIONS

A.  NOTICE OF CLAIM — You must give us written notice of claim within 30 days after your loss or as soon as reasonably possible. You may give notice or you may have someone do it for you. The notice should give your name and policy number, which is shown on the Policy Schedule. The notice should be mailed to us at our Administrative Office or to one of our agents.

B.  CLAIM FORMS — When we receive your notice of claim, we will send you forms for filing proof of loss. If we do not send you these forms in 15 days, you may meet the proof of loss rule by giving us a written statement of the nature and extent of your loss within the time limit stated in the Proof of Loss section.

C. PROOF OF LOSS — You must give us written proof of loss, in the case of a claim for loss for which this policy provides any periodic payment contingent upon continuing loss, within 90 days after the termination of the period for which we are liable. If it is not reasonably possible to give us this timely proof, we will not reduce or deny your claim if proof is filed as soon as reasonably possible. In any event, proof must be furnished within 12 months from the time proof is otherwise required, unless legal capacity is absent.

D. TIME OF PAYMENT OF CLAIMS — Benefits payable under this policy will be paid as soon as we receive proper written proof of loss.

E. PAYMENTS OF CLAIMS — All benefits will be paid to you or your assignee. Any benefits unpaid at your death may be paid to your estate. If benefits are payable to your estate, we may pay up to $1,000 to any relative of yours by blood or marriage whom we find is entitled to it. Any payment made in good faith will discharge us with regard to such payment.

F. BENEFIT APPEALS — If we deny your claim and do not pay benefits under this policy, you or your representative may appeal such denial. You or your representative must send us a written request for an appeal which may include any supporting material. We will review your request and notify you or your representative of our decision within 30 days of receiving the request.

G. RIGHT OF RECOVERY — If we make an error in processing your claim, we have the right to recover any overpayment of benefits made to you. We will recover by offset any amounts which have not been previously recovered at the time we make another benefit payment.

H. PHYSICAL EXAMINATION — We, at our expense, have the right to have you examined as often as is reasonable while a claim is pending or you are receiving benefits.

I. LEGAL ACTION — No legal action may be brought to recover on this policy before 60 days from the date written proof of loss has been given to us as required by this policy. No such action may be brought more than 3 years after the date written proof of loss is given to us.

J. BENEFICIARY — The Beneficiary will be the person or persons named in the application or changed by written request to receive any benefit payments due upon your death. The Beneficiary's consent is not required for this or any other change in the policy, unless the designation of the Beneficiary is irrevocable. You can change the Beneficiary at any time by giving us written notice. A new Beneficiary designation will be effective on the date you sign the written request for the change. We will not be liable for any action taken or payment made before we record notice of any Beneficiary change.

If you designate more than one person as Beneficiary, the interests of all Beneficiaries will be equal unless your designation specifically provides otherwise. The share of any Beneficiary who does not survive, shall pass equally to the surviving Beneficiaries, unless your designation specifically provides otherwise. If no Beneficiary is designated or no Beneficiary survives you, then your estate will be the Beneficiary.

## PART 6: GENERAL POLICY PROVISIONS

A. ENTIRE CONTRACT; CHANGES — This policy and any attachments, plus the application is the entire contract between you and us. No agent may change it in any way. Only one of our officers can approve a change. Any change must be shown on your policy and approved in writing.

B. INCONTESTABILITY — If this policy has been in force for less than six (6) months we may rescind this policy or deny an otherwise valid claim upon a showing of misrepresentation that is material to the acceptance for coverage.

If this policy has been in force for at least six (6) months, but less than (2) years, we may rescind this policy or deny an otherwise valid claim upon a showing of misrepresentation that is both material to the acceptance for coverage and which pertains to the condition for which benefits are sought.

After this policy has been in force for two (2) years it is not contestable upon the grounds of misrepresentation alone. Such policy may be contested only upon a showing that the Insured knowingly and intentionally misrepresented relevant facts relating to the Insured's health.

C. GRACE PERIOD — Your policy has a 31 day grace period. If a premium is not paid on or before the due date, you may pay it during the grace period. Your policy will stay in force for this 31 day grace period before lapsing.

Upon expiration of this 31 day grace period, we will provide written notice to you and an individual designated by you to receive a notice of non-payment of premium. Such notice will be sent at least 30 days before cancellation of your coverage.

D. POLICY TERMINATION — This policy will terminate and your coverage will end on the earliest of the following events to occur:

1. After we have paid the Total Maximum Amount Payable shown in the Policy Schedule;

2. Your policy lapses due to nonpayment of premium;

3. The effective date of cancellation of this policy when cancellation is requested by you as described under PART 7F., REFUND OF UNEARNED PREMIUM; or

4. The date of your death.

E. REINSTATEMENT — Your policy will lapse if the premium is not paid before the end of the grace period. If we receive evidence satisfactory to us that you have a Cognitive Impairment or loss of functional capacity, we will reinstate your policy without requiring an application, upon payment of all past due and unpaid premiums, at any time within 6 months of the date your last premium payment was due. Otherwise, if we later accept your premium without requiring an application for reinstatement, that payment will put your policy back in force. If we require an application, we will give you a conditional receipt for your premium. Your policy will be reinstated upon our approval of such application or, lacking such approval, on the 45th day following the date of the conditional receipt, unless we have previously notified you in writing of our disapproval of the application.

The reinstated policy will cover only a loss for sickness incurred more than 10 days after the date of reinstatement. For an accident, you will be covered only for an injury sustained after the date of reinstatement. In all other respects, both you and we shall have the same rights that existed just before the due date of the premium in default, subject to any provisions noted on or attached to the reinstated policy.

## PART 7: OTHER POLICY PROVISIONS

A. OWNER — The Owner of this policy is the insured unless otherwise provided in the application or changed by written request. While the insured (or either insured if joint coverage) is living, the Owner may exercise every right and receive every benefit provided by this policy. If an Owner other than the insured dies while the insured is living, all rights of that Owner shall belong to the Owner's executors or administrators unless otherwise provided.

B. MISSTATEMENT OF AGE — If your age was misstated in the application, all benefits payable will be those that the premium would have bought at your correct age. Furthermore, if no coverage would have been provided based on your true age, our liability will be limited to a refund of any premium paid for such coverage.

C. UNPAID PREMIUM — Any premium due and unpaid or covered by a note or written order may be deducted from any claim payment payable under this policy.

D. CONFORMITY WITH STATE STATUTES — Any provision of this policy, which on its effective date, is in conflict with the statutes of the state in which you reside on such date, is hereby amended to conform with the minimum requirements of such statutes.

E. ASSIGNMENT — No assignment of interest under your policy shall be binding upon us unless the original or a copy of the assignment is filed with us at our Administrative Office shown on Page 1 of this policy. We do not assume any responsibility for the validity of an assignment.

F.  REFUND OF UNEARNED PREMIUM - Upon
    your death, we will refund any unearned premium
    for this policy on a pro-rata basis. We will make this
    refund within 30 days of receipt of proof of your
    death.

    You may cancel your policy upon written request to
    us. Cancellation will be effective upon our receipt of
    your request or at a later date specified by you. If
    you cancel this policy, we will refund any unearned
    premium on a pro-rata basis. Cancellation will be
    without prejudice to any claim originating prior to
    the effective date of cancellation.

## COMPREHENSIVE LONG TERM CARE POLICY

This policy provides Nursing Facility Confinement Benefits in a Nursing Facility or Residential Care Facility for the Elderly, Home Care Benefits and other benefits as defined herein, subject to all terms and provisions

**LINCOLN BENEFIT LIFE COMPANY**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

## LINCOLN BENEFIT LIFE
COMPANY

*A Member of Allstate Financial Group*

Lincoln Benefit Life Company
Home Office: Lincoln, NE
LifeCare Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243

# Designation of Third Person(s) to
# Receive Notice of Cancellation

## Protection against unintended lapse.

I (We) understand that I (we) have the right to designate at least one person other than myself (ourselves) to receive notice of cancellation of this long-term care insurance policy for non-payment of premium. I (We) understand that notice to my (our) designee will not be given until 30 days after a premium is due and unpaid.

☐   I (We) the undersigned elect **NOT** to designate any person to receive such notice.

I (We) the undersigned, designate the following person(s) to receive a Notice of Cancellation in the event that my (our) policy is cancelled for nonpayment of premium.

**1**

| Name | Telephone Number |
|------|------------------|
| AUDRENA DOMINGUEZ | 650-635-1123 |

Residence Address (Street, City, State, Zip)

715 2ND AVE., SAN BRUNO, CA 94066

**2**

| Name | Telephone Number |
|------|------------------|
|  |  |

Residence Address (Street, City, State, Zip)

**3**

| Name | Telephone Number |
|------|------------------|
|  |  |

Residence Address (Street, City, State, Zip)

Signed this _10th_ day of _November_ 19 _98_ at _San Francisco, CA_

_____
Proposed Insured

LB-0148A                    LBL-2071                    Proposed Joint Insured

01000272

Lincoln Benefit Life Company
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

## FULL NONFORFEITURE RIDER

This rider is made part of the policy to which it is attached and is applicable only when shown on the Policy Schedule. It is subject to all provisions, definitions, conditions, exceptions, and limitations of the policy which do not conflict with this rider. If any conflicts occur, the provisions of this rider will apply. In this rider, Lincoln Benefit Life Company will be referred to as "we", "us", or "our". The insured(s) named in the Policy Schedule will be referred to as "you" or "your".

We promise to pay the Full Nonforfeiture Benefit as described below. We make this promise in consideration of: (1) the statements made in your signed application, and (2) payment of the premium for this rider. This rider takes effect on the date shown in the Policy Schedule and continues in force until the policy to which it is attached terminates.

### FULL NONFORFEITURE BENEFIT

A. If your policy lapses due to nonpayment of premium:

1. Coverage will continue and benefits will be payable at the daily benefit amounts in effect on the date of lapse as described in the policy and any attached riders.

2. The total of benefits payable under the policy and any attached riders is equal to the total of premiums paid for the policy and riders, reduced by the total of any benefits already received under the policy and any attached riders. This benefit replaces any remaining Total Maximum Amount Payable in effect on the date of lapse. Any benefits paid to you after your policy lapses will be subtracted from this new Total Maximum Amount Payable. If benefits are continued for confinement under the Extension of Benefits provision in the policy, the Full Nonforfeiture Benefit will be payable for any future confinement.

3. Any premiums paid which are not paid to you in benefits as continued coverage after lapse will be paid to your Beneficiary upon your death (last of your deaths under joint coverage).

4. Benefits payable under this provision are subject to: Any applicable Elimination Period and all other provisions of the policy and riders that would have been in effect had the policy not lapsed. However, no further increases will occur under the Compound Benefit Increase Rider, if attached to the policy, and daily benefits will be payable at the same amount in effect on the date the policy lapses.

B. If your policy lapses due to your death (last of your deaths under joint coverage) and the policy has not previously lapsed due to nonpayment of premium, the total of premiums paid, with no deduction for benefits already paid to you, will be paid to your Beneficiary.

### YOUR 30 DAY RIGHT TO EXAMINE YOUR RIDER

If you are not satisfied with your rider, you may return it to us or our agent within 30 days after you receive it. We will then refund any premium you have paid within 30 days of our receipt of the rider and the rider will be considered to be void from its beginning.

**Read this rider carefully. It is a part of a legal contract between you and us.**

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.

John J. Morris
Vice President and Secretary

Gene Wraith
President

LB-6301-R2-CA-1

01000273

Lincoln Benefit Life Company
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

## COMPOUND BENEFIT INCREASE RIDER

This rider is made part of the policy to which it is attached and is applicable only when shown on the Policy Schedule. It is subject to all provisions, definitions, conditions, exceptions, and limitations of the policy which do not conflict with this rider. If any conflicts occur, the provisions of this rider will apply. In this rider, Lincoln Benefit Life Company will be referred to as "we", "us", or "our". The insured(s) named in the Policy Schedule will be referred to as "you" or "your".

We promise to pay the Compound Benefit Increase as described below. We make this promise in consideration of: (1) the statements made in your signed application; and (2) payment of the premium for this rider. This rider takes effect on the date shown in the Policy Schedule and continues in force until the policy to which it is attached terminates.

## COMPOUND BENEFIT INCREASE

On each policy anniversary, we will increase the Daily Benefit amounts shown in the Policy Schedule, as well as the remaining Total Maximum Amount Payable, by 5%, compounded annually. Benefits will continue to increase annually while you are receiving benefits.

## YOUR 30 DAY RIGHT TO EXAMINE YOUR RIDER

If you are not satisfied with your rider, you may return it to us or our agent within 30 days after you receive it. We will then refund any premium you have paid within 30 days of our receipt of the rider and the rider will be considered to be void from its beginning.

Read this rider carefully. It is a part of a legal contract between you and us.

Executed for the Company at its Home Office in Lincoln, Nebraska on its Effective Date.


*John J. Morris*
John J. Morris
Vice President and Secretary


*Gene Wraith*
Gene Wraith
President

**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243

**APPLICATION FOR
COMPREHENSIVE LONG TERM CARE OR
NURSING FACILITY ONLY POLICY**
(PLEASE PRINT)

THIS POLICY IS AN APPROVED LONG-TERM CARE INSURANCE POLICY UNDER STATE INSURANCE REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

This contract for long-term care insurance is not intended to be a federally qualified long-term care insurance contract.

| Proposed Insured (First Name, Initial, Last Name) | Sex | Social Security Number |
|---|---|---|
| Briceida Cyan | ☐ Male ☑ Female | |

| Birthdate | Age (Nearest Birthday) | Birthplace (City, State) | Height | Weight |
|---|---|---|---|---|
| | 52 | PANAMA | 5-0" | 103 |

Residence Address (Street, City, State, Zip)
125 DEL MONTE DR. PACIFICA, CA 94044

Billing Address - If Different (Name, Street, City, State, Zip)

Telephone Numbers:
Home (650) 994-8056
Work (415-)337-6900
Preferred Contact: ☐ Home ☑ Work
Hours: 9:00 AM TO 12:00 NOON

## HEALTH QUESTIONS

**Yes No 1. During the past 24 months, have you:**

☐ ☑ (a) Needed assistance or supervision for everyday activities such as cooking, dressing, eating, housekeeping, bathing, toileting, transferring, shopping or walking?
☐ ☑ (b) Been confined to a bed; or used a wheelchair, walker, braces or cane?
☐ ☑ (c) Received kidney dialysis, used oxygen equipment or a catheter?
☐ ☑ (d) Received home health care services such as homemaker services, physical or speech therapy, or other rehabilitative therapy?
☐ ☑ (e) Experienced confusion, forgetfulness or memory loss, dizziness, fainting, weakness or fatigue, falling, unstable gait, or loss of bladder or bowel control?
☐ ☑ (f) been confined to a hospital, nursing facility, assisted living facility, or home for the aged?

**Yes No 2. During the past 10 years, have you been medically diagnosed or treated for:**

☐ ☑ (a) AIDS or positive HIV status
☐ ☑ (b) Amnesia
☐ ☑ (c) Alzheimer's Disease or dementia
☐ ☑ (d) Amyotrophic Lateral Sclerosis
☐ ☑ (e) Multiple Sclerosis
☐ ☑ (f) Muscular Dystrophy

Yes No
☐ ☑ (g) Myasthenia Gravis
☐ ☑ (h) Organic Brain Syndrome
☐ ☑ (i) Parkinson's Disease or Parkinsonism
☐ ☑ (j) Paralysis

**Yes No 3. During the past 10 years, have you been medically advised or treated for:**

☐ ☑ (a) abnormal blood pressure
☐ ☑ (b) heart or circulatory disorder
☐ ☑ (c) diabetes
☐ ☑ (d) asthma, emphysema or other chronic respiratory disorder
☐ ☑ (e) cancer: internal or melanoma
☐ ☑ (f) skin cancer other than melanoma
☐ ☑ (g) stroke or TIA (transient ischemic attack)
☐ ☑ (h) any form of neurological disorder

Yes No
☐ ☑ (i) cirrhosis of the liver
☐ ☑ (j) alcohol or drug dependency or abuse
☐ ☑ (k) arthritis or osteoporosis
☐ ☑ (l) depression or other psychiatric disorder
☐ ☑ (m) seizures or other brain disorder
☐ ☑ (n) kidney, prostate, breast or other genito-urinary disorder

## HEALTH QUESTIONS (CONTINUED)

Yes No  4.  During the past 12 months have you:

☑ ☑ (a) consulted a physician for a checkup? — *ANNUAL PAP SMEAR - NO FINDINGS HEALTHY - April 1, 1988*
☐ ☑ (b) If "Yes" to Question 4(a) above, any adverse findings?
☐ ☑ (c) taken prescription medication?
☐ ☑ (d) consulted a physician for any other reason not previously noted in this application?
☐ ☑ (e) been declined by another company for a policy providing nursing home or home health care coverage?
☐ ☑ (f) smoked cigarettes?
☐ ☑ 5. Have you consulted any specialist(s) in the last 2 years?

If you answered "Yes" to any of questions 1-4 above, or are currently taking any prescribed medication, please provide the information requested below.

| Ques. No. | List any Medication Prescribed | Name, Address and Telephone Number of Doctor or Care Facility |
|---|---|---|
| 4A | Does not take any medication | LAURA NORELL  OB-GYN St. Lukes Womens Clinic 1650 VALENCIA San Francisco, Ca 94110 |
| | | |
| | | |
| | | |
| | | |

## INFORMATION ABOUT YOUR INSURANCE COVERAGE

Yes No

☐ ☑ 1.  Do you have a policy, certificate or application with this or any other company providing long term care insurance or did you have another long term care insurance policy or certificate in force during the last twelve (12) months (including health care service contract, health maintenance organization contract)?
If "Yes", please provide the following information on each policy:

| Company | Policy Number | Issue Date | Type | Daily Benefit | Paid to Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

☐ ☑ 2.  Are you covered by Medicaid?
☐ ☑ 3.  Have you received disability benefits in the last two years?
☐ ☑ 4.  Do you intend to replace any of your medical or health insurance coverage with this policy?
If "Yes", please provide the following information and complete required replacement forms:

| Company | Policy Number | Issue Date | Type | Daily Benefit | Paid to Date |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |

LB-6301-A.1-CA(NQ)                                                                                Page 2

## ADDITIONAL INFORMATION

1. With whom do you currently live? ☐ Spouse ☐ Family ☑ Alone ☐ Other:_____

2. Type of residence? ☑ House or Condominium ☐ Apartment
   ☐ Retirement Community ☐ Other:_____

3. Are you actively at work? ☑ Yes ☐ No  If "Yes", hours per week:_____

4. Occupation: *UNIVERSITY PROFESSOR* + If retired, date of retirement: _____
   *BUSINESS OWNER*

5. Are you applying as a member of an employer group or association group? ☐ Yes ☑ No
   If "Yes" Group Name: _____

## COVERAGE APPLIED FOR

☐ **Nursing Facility Only Policy**

Daily Benefit Amount for Nursing Facility Confinement ($50.00 - $250.00): $ _____
Benefit Amount Multiplier: ☐ 1,095 ☐ 1,825 ☐ Lifetime

☑ **Comprehensive Long Term Care Policy**

Daily Benefit Amounts ($50.00 - $250.00):
   Nursing Facility Confinement (NFC): $ *120. —*
   Home Care (minimum $50.00): ☐ 50% ☑ 100% of NFC Daily Benefit Amount
   Benefit Amount Multiplier: ☐ 1,095 ☐ 1,825 ☑ Lifetime

**Elimination Period:** ☑ 0 Days ☐ 30 Days ☐ 90 Days

**Optional Coverage**

☑ Compound Benefit Increase Rider

☐ Paid-Up Survivor Benefit Rider (Available with Joint Coverage only)

Nonforfeiture Benefit Riders (Select only one)
   ☑ Full Nonforfeiture
   ☐ Limited Nonforfeiture
   ☐ Shortened Benefit Period

**Primary Insured Rate Class**
☑ Pref. NS
☐ Pref.
☐ Std.

**Secondary Insured Rate Class**
(Complete Supplemental Application)
☐ Pref. NS
☐ Pref.
☐ Std.

**Premium Payment Options**
☐ 10-Year Premium
☐ Single Premium
   ☐ With Nonforfeiture Benefit
   ☐ Without Nonforfeiture Benefit

**Payment Mode (Select One)**
☐ Annual
☐ Semi-Annual
☐ Quarterly
☑ PAC/EFT
☐ Single

| Annual (or Single) Premium | Modal Premium | | Paid with Application |
|---|---|---|---|
| $ 2,576.17 | $ 218.97 *PAC/EFT* | | $ 218.97 |

| Beneficiary Name and Relationship | Special Request / Requested Effective Date |
|---|---|
| ANDREW DOMINGUEZ ⎱ children<br>AUDRENA DOMINGUEZ ⎰ | 11-10-98 |

LB-6301-A.1-CA(NQ)

**AGREEMENT** — The answers given are complete and true to the best of my knowledge and belief. I understand that the Company will rely on my written answers to the questions in this application and that if my answers are not complete and true, my policy may not be valid. I also understand that the agent cannot determine eligibility for or alter the terms of the proposed policy.

**ACKNOWLEDGEMENT** — I acknowledge receipt of an Outline of Coverage (including HICAP listing), Buyer's Guide and Disclosure Statement, which includes the Medical Information Bureau Notice, and the Notice of Insurance Information Practices.

**PRE-EXISTING CONDITIONS** — I understand that the policy applied for will not pay benefits for any loss incurred during the first six (6) months after the issue date due to a condition not disclosed on this application, for which I received medical advice or for which treatment was recommended by or received from a physician within six (6) months before the issue date.

**AUTHORIZATION** — I hereby authorize the Medical Information Bureau or any licensed physician, medical practitioner, hospital, clinic, medical facility or insurance company that has any records or knowledge of me or my health, relative to my insurability, to give to Lincoln Benefit Life Company or its reinsurers any such information. I understand that such information will be used to determine my eligibility for insurance. A photocopy of this authorization shall be as valid as the original. This authorization will be valid for 26 months from the date signed and I understand that I or my authorized representative may receive a photocopy of it.

I have reviewed the Outline of Coverage and the graph that compares the benefits and premiums of this policy with and without the Compound Benefit Increase Rider and I have chosen to ☐ accept ☐ reject coverage under the Compound Benefit Increase Rider.

**CAUTION: If your answers on this application are misstated or untrue, Lincoln Benefit Life Company may have the right to deny benefits or rescind your policy.**

Signed at _Son Francisco, CA_   _BClyson_   _11/10/98_
City, State         Proposed Insured's Signature         Date

Yes No

**AGENT'S STATEMENT**

☑ ☐  1.  Did you personally interview the proposed insured(s), ask all the questions and witness the signatures?
☐ ☐  2.  Does a Power of Attorney agreement exist for any proposed insured?
         If "Yes", explain why this agreement has been established. _____

☐ ☑  3.  To the best of your knowledge, is the insurance applied for intended to replace any medical or health insurance in force with this or any other company?

      4.  List any other health insurance policies that you have sold to the proposed insured(s):
          _N/A_

          (a)Which of the policies listed above are still in force, if any?
          _N/A_

          (b)Which of the policies listed above sold in the past five (5) years are no longer in force, if any?
          _N/A_

I certify that the proposed insured's(s') answers to the questions were fully and accurately recorded in the application, that the questions in the Agent's Statement have been answered accurately and that the Outline of Coverage, the Disclosure Statement and the Buyer's Guide have been given to the proposed insured(s). I have reviewed the current health insurance coverage of the applicant(s) and find that the coverage of the type and amount applied for is appropriate for the applicant's(s') needs. Further, if this is a replacement, I have reviewed the applicant's(s') current health insurance coverage and find that this replacement is appropriate for the applicant's(s') needs.

_ETHELYNNE BATES_   _3D395_   _Hfelomew Bet_   _11/10/98_
Licensed Agent's Name (please print)   Code No.   Licensed Agent's Signature   Date

LB-6301-A.1-CA(NO)                                                                Page 4

5

Lincoln Benefit Life Company
Home Office: Lincoln, NE
Administrative Office: 6400 Canoga Avenue
Post Office Box 4243
Woodland Hills, CA 91365-4243

**SUPPLEMENTAL APPLICATION FOR POLICY OWNERSHIP**
**(PLEASE PRINT)**

| Proposed Insured (First Name, Initial, Last Name) | Birthdate | Social Security Number |
|---|---|---|
| BRICEIDA  RYAN | | |

| Proposed Joint Insured (First Name, Initial, Last Name) | Birthdate | Social Security Number |
|---|---|---|
| | | |

| Proposed Policy Owner and Relationship to Proposed Insured(s) | Social Security or Tax I.D. Number |
|---|---|
| | |

Residence Address (Street, City, State, Zip)

125 DEL MONTE DR. PACIFICA, CA  94044

| Bill to: ☐ Owner  ☑ Insured | Owner's Billing Address - If Different (Name, Street, City, State, Zip) |
|---|---|
| | |

Policy Owner is: ☑ Individual    ☐ Partnership    ☐ Corporation    ☐ Trustee

| Contingent Policy Owner and Relationship to Proposed Insured(s) | Social Security or Tax I.D. Number |
|---|---|
| | |

Residence Address (Street, City, State, Zip)

Contingent Owner's Billing Address - If Different (Name, Street, City, State, Zip)

Contingent Policy Owner is:    ☐ Individual    ☐ Partnership    ☐ Corporation    ☐ Trustee

Signed at _San  Francisco, CA_ this _10th_ day of _November_ 19 _98_
City, State

_BCRyan_
Proposed Insured's Signature

Proposed Joint Insured's Signature

Proposed Policy Owner's Signature

Agent's Signature

LB-6301-AO                    LBL-2070

# EXHIBIT  B

**Lincoln Benefit Life Company**
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
Phone: (888) 503-8110
Fax: (818) 867-2506

LINCOLN BENEFIT LIFE
AN ALLSTATE COMPANY

## Claim for Long Term Care
### Claimant's Statement

| Part 1 — Claimant Identification | Policy Number   10 700048852W | |
|---|---|---|
| Claimant's Name (last, first)<br><br>Ryan, Briceida | Social Security number | Date of birth (mm/dd/yyyy) |
| Home address<br><br>125 Del Monte Dr. Pacifica CA 94044 | Daytime telephone number<br>(650) 994-8056 | Fax number<br>(650) 994-8056 |
| Name of responsible party | Relationship | Telephone number<br>(   ) |
| Address | ☐ Power of Attorney<br>☐ Legal Guardian    ☐ Other _____ | |

If the responsible party is a Power of Attorney or Guardian, attach a copy of documents supporting financial authority on the claimants behalf.

**Part 2 — Claimant Condition**

Cause or condition requiring the need for long term care services

Tumor on Brain

RECEIVED
JAN 25 2010
CLAIMS DEPT

| Date symptoms were first noticed<br>12-15-09 | First date of medical treatment for this condition<br>12-15-09 |
|---|---|

**Part 3 — Activities of Daily Living (ADL's)**

Check the appropriate box that best describes the assistance you/claimant require with each ADL.

| | Independent | Need Stand-by Assistance | Needs Hands-on Assistance | Date Assistance Began | Date Assistance no longer Needed |
|---|---|---|---|---|---|
| Ambulation[1] | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Bathing | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Continence | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Dressing | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Eating | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Toileting | ☐ | ☑ | ☐ | \|   \| | \|   \| |
| Transferring | ☐ | ☑ | ☐ | \|   \| | \|   \| |

[1] Applies to CA residents only.

**Part 4 — Physician Information**

| Current treating physician<br><br>Dr. Ryan | Telephone number<br>(650) 991-3200 |
|---|---|
| Address<br>1500 Southgate #202 Daly City CA. 94015 | Fax number<br>(650) 991-1153 |

If you are being treated by other physicians, please provide the name and telephone number on a separate sheet of paper.

**Part 5 — Hospital Information**

| | | | | |
|---|---|---|---|---|
| Were you hospitalized?  ☑ Yes ☐ No | If yes, indicate the name, address, and telephone number where you were hospitalized | | | |
| **Name** | **Address** | **Telephone number** | **Admission Date(s)** | **Discharge Date(s)** |
| Seton Hosp | 1900 Sullivan  Daly City 94015 | (650)991-6503 | 12 15 09 | 12 23 09 |
| | | ( ) | \| \| | \| \| |

**Part 6 — Long Term Care Services Information**

| **Facility Services** | **Home and Community Services** |
|---|---|
| ☐ Nursing Home Facility | ☐ Home Health Care |
| ☐ Assisted Living Facility | ☐ Homemaker Services |
| ☐ Residential Care Facility | ☐ Adult Day Care |
| ☐ Hospice Care | ☐ Respite Care |
| ☐ Respite Care | ☐ Hospice Care |
| ☐ Other (specify) _____ | ☑ Other (specify) Live IN CAre ASSIStant |

| Name of Facility | Name of Home and Community provider   Judy Ay AIA |
|---|---|

| Contact person at Facility | Contact person at agency   Judy  Ay AIA |
|---|---|

| Address | Address   125 Del monte  PAcifica CA. 94044 |
|---|---|

| Telephone number ( ) | Fax number ( ) | Telephone number (650) 867-2696 | Fax number (650) 994-8056 |
|---|---|---|---|

| **Date of confinement in Facility** | | **Date of Home and Community services** | | |
|---|---|---|---|---|
| Admission date   \| \| | Discharge date   \| \| | First day of services   1 07 10 | Last day of services   \| \| | ☑ Ongoing services |

**Part 7 — Other insurance information**

| | | |
|---|---|---|
| Are you eligible or enrolled in | Medicare Part A?............................................................. | ☑ Yes ☐ No |
| | Medicare Part B?............................................................. | ☑ Yes ☐ No |
| Are you filing for reimbursement of expenses under Medicare?........................................................ | | ☐ Yes ☑ No |
| Are you filing for reimbursement of expenses under Medicaid?......................................................... | | ☐ Yes ☑ No |
| Do you have any other long term care insurance policies?............................................................... | | ☐ Yes ☑ No |
| If yes, please provide company name, address, policy number, and daily or monthly benefit amount | | |

| **Company Name** | **Address** | **Policy Number** | **Daily Amount** | **Monthly Amount** |
|---|---|---|---|---|
| | | | | |

| Date   1 20 10 | Name (print)   BriceldA RyAN | Signature |
|---|---|---|

**Important: Prior to submitting this completed form, please read the enclosed Fraud Notice.**

RECEIVE
JAN 2 5 2010
CLAIMS DEPT

01000223

**Lincoln Benefit Life Company**
Home Office: Lincoln, Nebraska
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
(888) 503-8110

## AUTHORIZATION FOR RELEASE
## OF HEALTH INFORMATION TO
## LINCOLN BENEFIT LIFE COMPANY ("COMPANY")

(This authorization complies with the HIPAA Privacy Rule)

Briceida Ryan

Name of Insured (please print)

10 70004BB52W

Policy Number

### AUTHORIZATION FOR DISCLOSURE

I authorize any licensed physician or licensed health care practitioner, hospital, clinic, medical facility, health care provider, insurance company or health plan ("My Providers") that has provided treatment, payment or health care services to me, to disclose my entire medical record and any knowledge of my past or present health or medical condition to the Company, its reinsurers and any third party administrator designated by the Company. This includes any information relating to HIV, AIDS and any sexually transmitted diseases, mental illness, the use of drugs, alcohol and tobacco, but excludes psychotherapy notes.

I also authorize any other organization, institution, facility, or person ("Other Persons") that has any records or knowledge of me or my health to disclose any such information to the Company, its reinsurers and any third party administrator designated by the Company. This includes any information relating to HIV, AIDS and any sexually transmitted diseases, mental illness, the use of drugs, alcohol and tobacco, but excludes psychotherapy notes.

Psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. Psychotherapy notes excludes the following information which is subject to disclosure under this Authorization: medication prescription and monitoring; counseling session start and stop times; the modalities and frequencies of treatment furnished; results of clinical tests; and any summary of the following items: diagnosis; functional status; the treatment plan; symptoms; prognosis; and progress to date.

By my signature below, I terminate any agreements I have made with My Providers or with Other Persons to restrict information in my medical records or any knowledge of my past or present health or medical condition and I instruct My Providers and Other Persons to release and disclose my entire medical record and other records or knowledge of me or my health without restriction.

### AUTHORIZATION FOR RECEIPT AND USE

I authorize the employees and business associates of the Company, its reinsurers and any third party administrator designated by the Company to receive and use any information provided by other parties under the above Authorization For Disclosure for the purpose of administering claims and determining or fulfilling responsibility for coverage and provision of benefits under the above Policy.

**I understand that if I refuse to sign this Authorization, the Company may not be able to make any claim or benefit payments under the above Policy.**

### REDISCLOSURE OF INFORMATION

I understand that if the person or entity that receives information provided pursuant to this Authorization is not subject to federal privacy regulations, the information may be redisclosed and will no longer be protected by the federal privacy regulations. In the case of this Authorization, however, the information described above will be received by an insurance company which is covered by the federal privacy regulations, and will not be used or redisclosed except as described above, or required by law; and the information will continue to be protected under the federal privacy regulations.

### REVOCATION OF AUTHORIZATION

I understand that I may revoke this Authorization in writing at any time by sending a written revocation to: *Lincoln Benefit Life Company, ATTN: Privacy Administrator, P.O. Box 4243, Woodland Hills, CA 91365-4243.* I also understand that any such revocation will not be effective to the extent that action has been taken by the Company in reliance on this Authorization or to the extent that the Company has a legal right to contest a claim under the Policy or to contest the Policy itself.

### EXPIRATION OF AUTHORIZATION

This Authorization will remain in force for the term of coverage of the above Policy with regard to any claim under the Policy. A copy of this Authorization is as valid as the original.

I acknowledge that I have received a copy of this Authorization.

RECEIVED
JAN 25 2010
CLAIMS DEPT

Insured or Personal Representative

Date   1-19-10

Description of Personal Representative's authority or relationship to Insured.

LB-0329

Insured Copy

01000224

00

**Lincoln Benefit Life Company**
Long Term Care Administrative Office
Post Office Box 4243
Woodland Hills, CA 91365-4243
Phone: (888) 503-8110
Fax: (818) 867-2506



LINCOLN BENEFIT LIFE
AN ALLSTATE COMPANY

| Fraud Notice |
|---|

| Insured Briceida Ryan | |
|---|---|
| Policy Number 10 700048852W | Claim Number 20100009 |

### IMPORTANT: This is part of the claim form. Review the applicable fraud notice. Sign and date below and return along with the claim form.

Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person submits an insurance application or statement of claim containing any materially false, incomplete or misleading information may be committing a crime and may be subject to civil or criminal penalties and may be denied coverage and/or benefits.

The laws of some states require us to furnish you with the following notice:

**California, Oregon, and Texas:** Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Colorado: It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.**

**Florida:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**New Hampshire:** Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

**New Jersey:** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

**Pennsylvania:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact, material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**New York:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Washington:** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

**Washington, D.C.:** Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

| Signature of person/persons completing this form | RECEIVED | Date 1- 20-10 |
|---|---|---|
| Printed name of person/persons completing this form | JAN 2 5 2010 CLAIMS DEPT. | |

LB-0497                      01000225                      A. Becerra    04